UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| YONG DONG WANG, | § § | |
| *Plaintiff*, | § § | |
| v. | § | EP-17-CV-00209-DCG |
| | § | |
| UNIVERSITY OF TEXAS AT EL PASO and DR. CHUNQIANG LI, | § § § | |
| | § | |
| *Defendants*. | § | |

## ORDER

Presently before the Court is Defendants University of Texas at El Paso ("UTEP") and Dr. Chunqiang Li's ("Dr. Li") "Motion for Summary Judgment" ("Motion") (ECF No. 31) filed on April 2, 2018. Therein, Defendants request that the Court grant summary judgment in their favor on each of Plaintiff Yong Dong Wang's ("Dr. Wang") claims and dismiss the case with prejudice. Mot. at 22. For the reasons that follow, the Court **GRANTS** Defendants' Motion.

### I. BACKGROUND

Dr. Wang is a Chinese national who was employed by UTEP as a postdoctoral research scientist in El Paso, Texas. Am. Compl. at 1, ECF No. 25. UTEP is a state university located in El Paso, Texas. *Id.* Dr. Li is an Associate Professor of Physics at UTEP. Mot., Ex. A ¶ 2. After receiving grants in 2014, UTEP and Dr. Li sought to hire a postdoctoral research scientist. *Id.* ¶ 4. Dr. Wang applied for the position, and after evaluating his credentials, Dr. Li offered him the job. *Id.* Dr. Wang began his postdoctoral appointment at UTEP in March 2015, and Dr. Li, satisfied with his performance, renewed his term for another year in August 2015. *Id.* ¶¶ 5–6.

However, during the spring of 2016, Dr. Li and Dr. Wang's working relationship began to sour. *Id.* Dr. Li states that Dr. Wang's performance declined significantly and that he was

unable to present his research findings or answer questions during the weekly team meetings. *Id.* Further, in April 2016, according to Dr. Li and Aurelio Paez, a Ph.D. student at UTEP, Dr. Wang acted aggressively, unprofessionally, and disrespectfully toward Dr. Li during a weekly team meeting. *Id.* ¶ 11; Mot., Ex. C ¶ 4. Dr. Li affirms that Dr. Wang's angry and aggressive demeanor continued during a meeting in his office after the weekly team meeting. Mot., Ex. A ¶ 11.

Prior to his term expiring in August 2016, Dr. Wang approached Dr. Li about the renewal of his postdoctoral appointment. *Id.* ¶ 12. According to Dr. Li, he told Dr. Wang that he was only going to renew his term for three months, through the end of November 2016, to allow Dr. Wang to finish his experiment because Dr. Wang's performance was severely lacking. *Id.* Nevertheless, Dr. Li states that following more angry and aggressive behavior at the November 4 team meeting, he barred Dr. Wang from working in the lab. *Id.* ¶¶ 13–14.

However, Dr. Wang's version of events differs greatly from Dr. Li's. Dr. Wang alleges that Dr. Li promised to help him get his H1B Visa and represented the term of appointment as being for three years at the time of hiring, without explaining that the term was renewable at the discretion of UTEP each year. Am. Compl. at 2. Further, Dr. Wang asserts that Dr. Li managed him differently after he notified Dr. Li that he was being baptized, including trying to shorten the term of his employment and treating him differently at the team meetings. *Id.* at 2–3. For example, Dr. Wang contends that Dr. Li berated him at the November 4 team meeting for his demeanor not being submissive enough and his performance. *Id.* at 3. Finally, Dr. Wang alleges that Dr. Li fired him after the November 4 team meeting. *Id.*

On November 7, Dr. Wang stopped reporting to work. Mot., Ex. B ¶ 3. On November 10, Dr. Wang indicated to UTEP's Office of Human Resources that he sought to file a complaint

against Dr. Li and that his relationship with Dr. Li had changed after an incident at their church. *Id.* Subsequently, Dr. Wang submitted his formal resignation to UTEP on November 17 via email,[1] but UTEP continued to pay him through the end of his appointment term later that month. *Id.* ¶ 17.

On or about February 17, 2017, Dr. Wang filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of his national origin and religious beliefs. Am. Compl. at 3–4. On March 20, the EEOC issued Dr. Wang a right-to-sue letter because it was unable to resolve the dispute. *Id.* at 4. Dr. Wang then filed a complaint in the 448th District Court of El Paso County, Texas, alleging claims for discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Texas Commission on Human Rights Act (the "TCHRA"), codified in Chapter 21 of the Texas Labor Code; breach of contract; and defamation. Not. Removal, Attach. 3 at 5–6, ECF No. 1. On July 7, Defendants removed the cause to this Court on the basis of federal-question jurisdiction. Not. Removal at 1–2.

## II. STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of fact exists when evidence is sufficient for a reasonable jury to return a verdict for the non-moving party, and a fact is material if it 'might affect the outcome of the suit.'" *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986))). In deciding whether a genuine dispute as to any material fact exists, a trial court considers all of the evidence in the record and "draw[s] all

---

[1] Dr. Wang asserts that UTEP "induced" him to sign the letter of resignation by taking advantage of his poor English-language skills. Am. Compl. at 3.

-3-

reasonable inferences in favor of the nonmoving party" but "refrain[s] from making credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citation and internal quotation marks omitted). Instead, the court "only 'give[s] credence to the evidence favoring the nonmovant [and] that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016) (second alteration in original) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000)).

Procedurally, the party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014) (alterations in original) (quotation marks and citation omitted). When the nonmoving party will bear the burden of proof at trial, the moving party may satisfy this responsibility by "point[ing] out the absence of evidence supporting the nonmoving party's case." *Latimer v. Smithkline & French Labs.*, 919 F.2d 301, 303 (5th Cir. 1990); *see also Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 544–45 (5th Cir. 2005).

If the moving party succeeds, "the onus shifts to the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *LHC Grp.*, 773 F.3d at 694 (internal quotation marks and citation omitted). However, the nonmoving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions,

or only a scintilla of evidence." *Davis v. Fort Bend Cty.*, 765 F.3d 480, 497 n.20 (5th Cir. 2014) (quotation marks and citation omitted).

## III. DISCUSSION

In the instant case, Dr. Wang has asserted claims for discrimination under Title VII and the TCHRA, breach of contract, and defamation. Am. Compl. at 4–5. Defendants ask the Court to grant summary judgment in their favor on each of Dr. Wang's claims and dismiss the case with prejudice. Mot. at 22. As an initial matter, Defendants have notified the Court that Dr. Wang did not respond to their requests for admissions. *Id.* at 7. Thus, Defendants argue that the requests should be deemed admitted. *Id.* Dr. Wang concedes that he did not respond to the requests for admissions, but cites his lack of understanding of the law and difficulties with the English language as why his failure should not be held against him.[2] Resp. at 2, ECF No. 32. In accordance with Fifth Circuit precedent, the Court deems the requests admitted. *See Hulsey v. State of Tex.*, 929 F.2d 168, 171 (5th Cir. 1991) ("Under Federal Rule of Civil Procedure 36(a), a matter in a request for admissions is admitted unless the party to whom the request is directed answers or objects to the matter within 30 days.").

### A. Dr. Wang's Title VII and TCHRA Claims

Defendants move for summary judgment on Dr. Wang's Title VII and TCHRA claims. Mot. at 8–13, 16–22. The claims Defendants seek to dismiss are discrimination and hostile work

---

[2] While the Court is sympathetic to the plight of pro se litigants, the Court issued Dr. Wang the following admonishment at the September 21, 2017, hearing on Dr. Wang's request to terminate his attorney of record:
> As a pro se litigant, you will be extended one courtesy: we liberally interpret your pleadings. Beyond that we hold you to the exact same standard as an attorney, so if you think that somehow you're going to represent yourself and get some additional courtesies from the Court because you are pro se, you are very wrong. You'll be held to the same standard as an attorney whether you know the law or not. That's the standard that will be applied to you. Do you understand that?

Hr'g Tr. at 3, ECF No. 16. Dr. Wang responded that he understood. *Id.* Dr. Wang cannot now shroud himself in his lack of understanding of the law to avoid his discovery duties.

environment claims. *Id.* Dr. Wang has alleged two different adverse employment actions that purportedly support a claim of discrimination: discriminatory discharge and failure to train and supervise. Am. Compl. at 4. The Court will evaluate each of these claims in turn. However, as a threshold matter, Dr. Wang's Title VII and TCHRA claims are both analyzed under Title VII precedent. *See Khalfani v. Balfour Beatty Cmtys., LLC*, Civ. A. No. EP-12-CV-00422-DCG, 2014 WL 12530941, at *3 (W.D. Tex. Feb. 12, 2014) (collecting cases holding same).

### *1. Discriminatory Discharge*

The first adverse employment action Dr. Wang alleges that Defendants took against him is a discriminatory discharge. Am. Compl. at 4. Specifically, Dr. Wang asserts that Dr. Li fired him in November 2016 after the contentious group meeting where Dr. Wang is alleged to have acted unprofessionally. Resp. at 10. Defendants dispute Dr. Wang's assertion and argue that Dr. Wang was not fired prior to his formal resignation on November 17, 2016. Mot. at 11–13.

Where, as here, circumstantial evidence is used to prove discrimination, courts apply the tripartite burden-shifting framework set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002) ("If the plaintiff produces only circumstantial evidence of discrimination, the burden-shifting analysis set forth in *McDonnell Douglas* . . . guides our inquiry."). Under the *McDonnell Douglas* framework:

> First, the plaintiff must establish a prima facie case of discrimination. Second, the employer must respond with a legitimate, nondiscriminatory reason for its decision. This burden on the employer is only one of production, not persuasion, involving no credibility assessments. Third, if the employer carries its burden, the mandatory inference of discrimination created by the plaintiff's prima facie case drops out of the picture and the fact finder must decide the ultimate question: whether the plaintiff has proven intentional discrimination.

*Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000) (internal citations and quotation marks omitted). A prima facie case for discriminatory discharge requires proving by a preponderance of the evidence that "the plaintiff (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged [ ]; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (*per curiam*). If the plaintiff establishes his prima facie case and the defendant meets its burden of production, then the plaintiff must offer sufficient evidence to create a genuine issue of material fact that the employer's reason is pretextual. *Daniel v. Universal ENSCO, Inc.*, 507 F. App'x 434, 437–38 (5th Cir. 2013) (*per curiam*) (quoting *Burrell v. Dr. Pepper/Seven Up Bottling Grp.*, 482 F.3d 408, 411–12 (5th Cir. 2007)). *See also Outley v. Luke & Assocs.*, 840 F.3d 212, 216 (5th Cir. 2016) (In the discrimination context, "[t]he plaintiff . . . must [ ] 'produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination [to avoid summary judgment].'").

In the instant case, Defendants argue that Dr. Wang has failed to establish a prima facie case of discrimination. Mot. at 9–12. The Court agrees. Dr. Wang has not offered any authenticated evidence to the Court substantiating his claims of discrimination. Even if the Court were to be generous and accept Dr. Wang's allegations in his Response as evidence, there would be still be insufficient evidence to create a genuine issue of material fact regarding Dr. Wang's discriminatory discharge claim. If the Court were munificent to Dr. Wang, it could find that there are genuine issues of material facts regarding the first three elements of a discriminatory discharge claim. First, in construing Dr. Wang's Amended Complaint liberally,[3]

---

[3] *See, e.g., Smith v. Fed. Nat'l Mortg. Ass'n*, No. 3:11-CV-931-P, 2012 WL 13026816, at *3 (N.D. Tex. Feb. 29, 2012) ("However, because Smith is proceeding *pro se*, the Court liberally construes his

the Court could find that there is evidence he is a member of two protected groups as a Chinese national and a Christian.[4] Second, the Court could find that Dr. Wang was qualified for his job because UTEP hired him and renewed his appointment in August 2015 for one year. Third, the Court could find that the dispute surrounding whether Dr. Wang was fired or voluntarily resigned is an issue for trial. *See, e.g., McMann v. Greystar Mgmt. Servs., LP*, No. 1:12-CV-909, 2013 WL 6243847, at *4 (W.D. Tex. Dec. 2, 2013) (holding that the factual dispute regarding the account of the circumstances surrounding the employee's resignation is "enough to demonstrate a genuine dispute of material fact, making summary judgment inappropriate"); *Mendoza v. City of Palacios*, No. 3:11-CV-390, 2013 WL 3148667, at *4 (S.D. Tex. June 19, 2013) (noting that the supervisor's and employee's conflicting accounts of the events that led to the employee's resignation constituted a factual dispute that alone may be enough to get past summary judgment). However, Dr. Wang has not offered the Court any evidence that he was replaced by someone outside of his protected groups after his alleged termination or that he was treated less favorably than similarly situated employees outside of his protected groups. *See Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017) ("The 'similarly situated' prong requires a Title VII claimant to identify at least one coworker outside of his protected class who was treated more favorably 'under nearly identical circumstances.'"). Thus, Dr. Wang's inability to create a genuine dispute of material fact regarding the similarly situated prong compels the Court to conclude that he cannot establish a prima facie case of discrimination.

---

First Amended Complaint with all possible deference." (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972))).

[4] However, undermining Dr. Wang's discrimination claim is the fact that the supervisor who allegedly discriminated against him, Dr. Li, is a member of the same two protected groups. Mot., Ex. A ¶ 10. *See also Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 1002 (5th Cir. 1996) ( ["W]hen decision makers are all of the same protected class as the discharged employee, it is [ ] less likely that the unlawful discrimination was the reason for the discharge."); *Easterling v. Tensas Par. Sch. Bd.*, No. CV 14-0473, 2016 WL 1452435, at *6 (W.D. La. Apr. 13, 2016) (collecting cases).

Moreover, even if the Court were to bend over backwards to allow Dr. Wang to advance past the prima-facie-case stage of the *McDonnell Douglas* framework, Dr. Wang's discriminatory discharge claim still would not survive summary judgment. Defendants have met their burden of production by explaining that Dr. Wang's unprofessional behavior and angry outbursts during group meetings were the reasons for the alleged discharge. Mot. at 13. Thus, Dr. Wang would have to offer "substantial evidence" that Defendants' reasons are a pretext for discrimination. *See Outley*, 840 F.3d at 216. Dr. Wang has not offered any evidence of this. Accordingly, the Court GRANTS summary judgment in favor of Defendants with regard to Dr. Wang's discriminatory discharge claims under Title VII and the TCHRA.

### 2. *Failure to Train and Supervise*

Dr. Wang's second alleged adverse employment action is UTEP's failure to train and supervise Dr. Li. Am. Compl. at 4. However, as a threshold matter, the Court notes that adverse employment actions in Title VII discrimination cases are subject to the "ultimate employment decisions" test. *McCoy*, 492 F.3d at 559–60 ("We have historically held that . . . '[a]dverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating' . . . . [O]ur precedent recognizing only 'ultimate employment decisions' as actionable adverse employment actions remains controlling for Title VII *discrimination* claims"). However, the Fifth Circuit has "held that a failure to train does not constitute an ultimate employment decision or an adverse employment action." *Brooks v. Firestone Polymers, L.L.C.*, 640 F. App'x 393, 397 (5th Cir. 2016) (*per curiam*) (collecting cases). Thus, Dr. Wang's claims based upon UTEP's alleged failure to train and supervise Dr. Li must fail because they do not satisfy the "ultimate employment decisions" test. Accordingly, the

Court GRANTS summary judgment in favor of Defendants with regard to Dr. Wang's failure to train and supervise claims under Title VII and the TCHRA.

### 3. *Hostile Work Environment*

When Dr. Wang's Amended Complaint is liberally construed, it appears that he also has attempted to assert hostile work environment claims under Title VII and the TCHRA.[5] Am. Compl. at 4. Dr. Wang's support for his hostile work environment claim is his allegation that UTEP allowed Dr. Li to demand that Dr. Wang conduct himself in a "subservient manner as a good Chinese worker" rather than as an "American worker." *Id.* In order to state a hostile work environment claim under Title VII, the plaintiff must show that:

> (1) the victim belongs to a protected group; (2) the victim was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment affected a term, condition, or privilege of employment; and (5) the victim's employer knew or should have known of the harassment and failed to take prompt remedial action.

*E.E.O.C. v. WC&M Enterprises, Inc.*, 496 F.3d 393, 399 (5th Cir. 2007). Dr. Wang has failed to make such a showing. Dr. Wang has not offered any evidence, aside from unsubstantiated accusations and conclusory allegations, showing that his perceived mistreatment from Dr. Li is because of Dr. Wang's national origin. *Cf. Gibson v. Verizon Servs. Org., Inc.*, 498 F. App'x 391, 394 (5th Cir. 2012) (*per curiam*) ("We agree with the district court that Gibson fails to produce any summary judgment evidence, beyond her own subjective belief, that any of Fettig's conduct was based on sex or race. This court's case law is clear that 'conclusory allegations,

---

[5] In his Amended Complaint, Dr. Wang states:
Dr. Chunqiang Li created a hostile work environment through his discriminatory words and actions towards plaintiff because of plaintiff's national origin and religion. This conduct was so severe that it altered the terms and conditions of plaintiff's employment and interfered with plaintiff's work performance and created an intimidating, hostile, and offensive work environment. The actions resulted in a constructive termination of plaintiff's employment.
Am. Compl. at 4.

speculation, and unsubstantiated assertions are inadequate to satisfy' the nonmovant's burden in a motion for summary judgment."). Further, Dr. Wang's claims are undermined by the fact that Dr. Li belongs to the same protected group and a third-party witness has offered sworn testimony that it was Dr. Wang, not Dr. Li, acting abusively. Mot., Ex. A ¶ 10 ("Dr. Wang and I are both of Chinese nationality and citizenship"); Mot., Ex. C ¶ 4 ("In November 2016, I was present for Dr. Li's weekly meeting in which Dr. Wang was particularly irritated, acting unprofessionally and talking disrespectfully toward Dr. Li."). The record before the Court is bare of any details as to how Dr. Li harassed Dr. Wang or the alleged harassment's connection to Dr. Wang's national origin. Therefore, the Court is compelled to conclude that Dr. Wang's hostile work environment claims fail as a matter of law because there is no genuine issue of material fact. Accordingly, the Court GRANTS summary judgment in favor of Defendants with regard to Dr. Wang's hostile work environment claims under Title VII and the TCHRA.

## B. Dr. Wang's Breach-of-Contract Claim

In addition to his Title VII and TCHRA claims, Dr. Wang has asserted a claim for breach of contract. Am. Compl. at 4. Dr. Wang alleges that he had a three-year contract with UTEP and a promise that it would help him get an H1B Visa. *Id.* Thus, according to Dr. Wang, when UTEP wrongfully terminated him, it breached that contract. *Id.* Defendants dispute that there was ever a contract between them and Dr. Wang. Resp. at 13–16. Further, Defendants argue that if there was a contract, UTEP and Dr. Li, in his official capacity, are immune from a breach of contract suit under these circumstances. Resp. at 14. The Court agrees that UTEP and Dr. Li, in his official capacity, are immune from suit. *See, e.g., Texas A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007) ("[A]bsent special statutory permission, a party cannot pursue a breach of contract action against the State without first obtaining consent from the

Legislature"); *Texas Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 858 (Tex. 2002) ("Texas law is clear. Only the Legislature can waive sovereign immunity from suit in a breach-of-contract claim."); *Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 597 (Tex. 2001) ("Consequently, we conclude that there is but one route to the courthouse for breach-of-contract claims against the State, and that route is through the Legislature."); *Pathria v. Univ. of Texas Health Sci. Ctr. at San Antonio*, No. SA-12-CV-338, 2013 WL 265241, at *1 (W.D. Tex. Jan. 23, 2013) (holding that state universities are immune from breach-of-contract claims unless the legislature consents); *Prairie View A&M Univ. v. Dickens*, 243 S.W.3d 732, 735 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (holding the same). Dr. Wang has not offered any evidence to the Court that the Texas legislature has consented to his suit.

Moreover, even if Defendants were not shielded by immunity, Dr. Wang's breach-of-contract claim would still fail. Dr. Wang has not presented the Court with any evidence that Defendants breached the contract or that a contract even existed.[6] This is important because Defendants have disputed Dr. Wang's allegations that a contract existed and that they breached said contract. Mot. at 13–16. Dr. Wang has a duty to offer proper evidence to the Court if his breach-of-contract claim is to survive summary judgment. *See Tyler v. Citi-Residential Lending Inc.*, 812 F. Supp. 2d 784, 787 (N.D. Tex. 2011) ("Tyler has presented no evidence of any of the elements of a breach of contract claim. This becomes readily apparent when addressing the first element of a breach of contract claim: the existence of a valid contract. Tyler has failed to produce any documentation, affidavits, deposition testimony, or any other admissible evidence that might establish the existence [of a contract between the parties]"). He has failed to do so.

---

[6] It appears that UTEP intended to attach copies of Dr. Wang's appointment letters, which he seemingly contends comprise the contract between the parties, as Exhibits A-3 to A-5, but due to an unknown error, the letters do not appear in the record before the Court. *See* Mot., Ex. A ¶¶ 5–6, 12. However, UTEP's error does not absolve Dr. Wang of his duty to provide the Court with evidence supporting his claims in order to survive summary judgment. *See LHC Grp., supra*, 773 F.3d at 694.

Accordingly, the Court GRANTS summary judgment in favor of Defendants on Dr. Wang's breach-of-contract claim.

## C. Dr. Wang's Defamation Claim

Dr. Wang's final cause of action asserted is a defamation claim. In support of his defamation claim, Dr. Wang alleges:

> In the course of dealing with UTEP's representatives at the Human Resources Office[,] Dr. Wang was informed that Dr. Li had stated that he had barred Dr. Wang from the lab to "protect UTEP property[.]" These comments were made in the course and scope of Dr. Li's employment as plaintiff's supervisor and were accepted and ratified by Defendant without investigation. The comments were included by defendant in its justification for discharging Plaintiff. Said comments were patently false and wrongfully defamed Plaintiff's reputation as a scientist.

Am. Compl. at 5. In Texas, the elements of a defamation claim are: "(1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages, in some cases." *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015). With regard to the degree-of-fault element, a private individual need only prove negligence. *Id.* In the instant case, Dr. Wang has not provided the Court with any proper summary judgment evidence supporting his claim for defamation. Dr. Wang has an obligation to offer the Court enough evidence to create at least a genuine issue of material fact as to each element of his defamation claim to survive summary judgment. *See Andrews v. Schneider Logistics, Inc.*, No. 3:13-CV-2160-D, 2014 WL 6460010, at *12 (N.D. Tex. Nov. 18, 2014) ("Schneider is entitled to summary judgment on the basis that Andrews has failed to present admissible summary judgment evidence that any of these statements was published, was defamatory, or that Schneider acted negligently as to the truth of the statement."). Dr. Wang has failed to carry his burden. Accordingly, the Court GRANTS summary judgment in favor of Defendants on Dr. Wang's defamation claim.

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that Defendants University of Texas at El Paso and Dr. Chunqiang Li's "Motion for Summary Judgment" (ECF No. 31) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff Yong Dong Wang's claims against University of Texas at El Paso and Dr. Chunqiang Li are **DISMISSED WITH PREJUDICE**.

**IT IS FINALLY ORDERED** that the Clerk of the Court shall **CLOSE** this matter after docketing the Final Judgment to be issued separately on this day.

So **ORDERED and SIGNED** this 16th day of May 2018.

DAVID C. GUADERRAMA
**UNITED STATES DISTRICT JUDGE**